SCHOOL COMMITTEE OF the TOWN
OF NORTH PROVIDENCE

v.

NORTH PROVIDENCE FEDERATION
OF TEACHERS, LOCAL NO. 920
(AFL-CIO).

81-120-Appeal.

Supreme Court of Rhode Island.

June 6, 1984.

Robert S. Ciresi, North Providence, for plaintiff.

Richard A. Skolnik, Frederick G. Cass, Abedon, Michaelson, Stanzler, Biener, Skolnik & Lipsey, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us for the second time on appeal from a judgment of the Superior Court. An earlier appeal in this same case was decided in *School Committee of North Providence v. North Providence Federation of Teachers, Local 920 (AFL-CIO)*, R.I. 404 A.2d 493 (1979). It will be helpful if we first consider the issues that were raised in that case before setting forth the facts underlying the instant appeal.

An action was brought by the School Committee of the Town of North Providence (school committee) against the North Providence Federation of Teachers, Local No. 920, AFL-CIO (the union) on November 16, 1977, in order to vacate an arbitrator's award that had been rendered in interpretation of a collective-bargaining contract theretofore existing between the committee and the union. In bringing this action, the committee had failed to comply with the provisions of G.L. 1956 (1969 Reenactment) § 9-2-12, which governs the method by which an action may be brought against unincorporated associations. As we pointed out in the preceding case (North Provi-

dence I), the statute requires that such an action "be maintained against the president and secretary * * * if such persons exist." 404 A.2d at 494. Instead of bringing action against these persons, the school committee named the union as the party defendant and served the complaint upon a person believed to be the union's attorney. Thereafter, on December 10, 1977, the school committee filed an amended complaint that added as party defendants the president and the secretary of the union. In spite of the existence of the amended complaint, a justice of the Superior Court granted the union's motion to dismiss the original complaint with prejudice.

On appeal, we stated that the trial justice did not err in dismissing the complaint, but we further held that it was inappropriate to dismiss the complaint with prejudice. We observed that a dismissal under Rule 12(b)(5) of the Superior Court Rules of Civil Procedure for insufficiency of process does not have the effect of res judicata because it is not an adjudication on the merits. We went on to state:

> "Therefore, such a dismissal does not prejudice the plaintiff's right to file another complaint naming the proper party." 404 A.2d at 495.

Upon remand to the Superior Court for further proceedings in accordance with our opinion, the trial justice dismissed the 1977 action (C.A. 77–3501) on August 28, 1979. On November 8, 1979, the school committee filed a new complaint entitled "Motion for an Order to Vacate an Arbitrator's Award." This new complaint was docketed as M.P. 13465 (North Providence II). The complaint or motion was brought directly against the union and did not name the president and the secretary as parties. However, notice by mail was given to the

president of the union, although no notice was given to the secretary. The union appeared specially to challenge jurisdiction over the party defendant for failure to comply with § 9–1–12. It is interesting to note that in spite of the special appearance, the union filed a counterclaim seeking to confirm and enforce the arbitrator's award.[1]

This matter came before a second justice of the Superior Court who declined to stay the arbitrator's award but otherwise took the issues under advisement on December 5, 1979. On December 22, 1980, this second justice issued a rescript in which he (1) regarded North Providence I as still existing by reason of the amended complaint that had been filed therein prior to dismissal and (2) took the position that the later-filed North Providence II was merely surplusage. We believe that the trial justice was in error in purporting to revive and pass upon a civil action that had been dismissed by a prior trial justice without prejudice pursuant to a direction by this court. We had stated, with full knowledge of the existence of the amended complaint, that it was not error for the first trial justice to have dismissed North Providence I without prejudice. That action had the effect of ending the existence of that civil action. The right of the committee to bring a new action was then governed by the provisions of § 9–1–22, which generally provides that if an action is terminated in any other manner than by a final judgment upon the merits, the plaintiff may commence a new action within one year after termination. This privilege is limited by the terms of § 9–1–24, which states that the one-year period shall not apply in situations in which a different time period is prescribed by special provisions.

1. It is not essential to our decision in this case to determine whether the filing of a counterclaim and the seeking of affirmative relief from the court had the effect of nullifying the special appearance and waiving the challenge to the personal jurisdiction of the court over defendant. *Cf. Bouchard v. Bouchard,* 119 R.I. 656, 663–64, 382 A.2d 810, 813–14 (1978); *Brandt v.* *Brandt,* 119 R.I. 607, 611, 381 A.2d 1047, 1049 (1978); *Industrial Trust Co. v. Rabinowitz,* 65 R.I. 20, 22, 13 A.2d 259, 261 (1940); 1 Kent, R.I.Civ.Prac. §§ 12.6, 12.17 at 111, 121–22 (1969) (in respect to effect of filing counterclaim either permissive or compulsory upon challenge to personal jurisdiction).

■ In any event, the trial justice did not pass upon any of the union's objections to the adequacy of service of process in North Providence II but attempted to revive and render a decision in connection with a case that had already been dismissed, albeit without prejudice, by order of this court. This the trial justice had no authority to do. The dismissal of North Providence I terminated its existence subject only to the right of the committee to bring a new action. The trial justice had no power to revive the dismissed action either by inherent power or by virtue of any existing statute or rule of court. His decision in that case then had no force or effect.

Ordinarily we would remand this case to the Superior Court for consideration of North Providence II, including the challenge to jurisdiction and the counterclaim seeking confirmation of the award. However, in view of the fact that this case has twice come before us and further in view of the fact that this litigation has dragged on for six and a half years without reaching the merits of the controversy, we shall examine these merits in order to determine whether a remand is in the best interest of the parties to this litigation and is an appropriate use of judicial time and resources.

The principal complaint of the committee in respect to the arbitrator's award is that this award applies a remedy that would run beyond the period of the contract since the arbitrator's award was rendered nine days before the conclusion of the contract period. In effect, the arbitrator found that the committee was in violation of art. VII, § 2A, of the contract, which section relates to class size. The arbitrator further found that the school committee was in violation of art. VII, § 3A of the agreement, which concerned the provision of a fifty-minute preparation period for each teacher for each day. In effect the arbitrator provided in his award that during the ensuing year

the school committee must meet the requirements of these portions of the contract or in the alternative pay extra compensation to the teachers as recompense for the failure to meet the contractual goals. The trial justice held that this award exceeded the powers of the arbitrator. Scrutinizing this award in the light of the limited scope of judicial review accorded to arbitration decisions, we are of the opinion that a remand of this case is unwarranted.

We stated in *Jacinto v. Egan*, 120 R.I. 907, 391 A.2d 1173 (1978):

"The proper role for the courts in this regard is to determine whether the arbitrator has resolved the grievance by considering the proper sources * * * but not to determine whether the arbitrator has resolved the grievance correctly. * * * As long as the award 'draws its essence' from the contract and is based upon a 'passably plausible' interpretation of the contract, it is within the arbitrator's authority and our review must end." *Id.* at 912, 391 A.2d at 1176.

In the case at bar there is no indication that the collective-bargaining agreement between the parties did not include contractual provisions for the ensuing year similar to those that had previously existed between the parties. There has been no suggestion on the part of the school committee that the subsequent agreement had so been amended or changed as to render the arbitrator's award inapposite to such new provisions.[2]

■ Therefore, the arbitrator was attempting to frame an award that would give the school committee a reasonable opportunity to redress the grievance during the ensuing year or, in the alternative, to provide additional compensation. The discretion of an arbitrator in fashioning an award is extremely broad indeed. *See Council 94, AFSCME, AFL–CIO v. State*, 475 A.2d 200 (R.I.1984). We stated in *Cov-*

**2.** In fact at oral argument counsel for the union asserted without contradiction that the contractual provisions submitted to the arbitrator have been preserved unchanged in subsequent agreements between the parties.

*entry Teachers' Alliance v. Coventry School Committee*, R.I., 417 A.2d 886 (1980) that the submission of an issue to arbitration broadly phrased conveys equally broad powers to an arbitration panel. In that case by submitting the question "[W]hat should the remedy be?" the parties were granting broad discretion to the arbitrator in attempting to devise an appropriate award. We stated in that case:

> "Once again, we would remind the committee that this court has consistently maintained that the judiciary has no authority to vacate an arbitrator's award absent a manifest disregard of the provisions of the collective-bargaining agreement or a completely irrational result." *Id.* 417 A.2d at 889; *see Burns v. Segerson*, R.I., 404 A.2d 500, 504 (1979).

In examining the arbitrator's award in the light of the questions submitted to him, we cannot say that he did not make a "passably plausible interpretation of the contract" or that his award was not within the broad discretion conferred upon him.

Consequently, since our decision on the merits indicates that the arbitrator's award was not subject to judicial modification or reversal, we shall fashion a remedy necessary to bring this litigation to a definite conclusion. *See Cheetham v. Cheetham*, 121 R.I. 337, 342, 397 A.2d 1331, 1334 (1979). We select this remedy without reference to procedural impediments, most of which were the result of the school committee's failure to comply with the provisions of § 9–2–12.

For the reasons stated, the appeal of the union is sustained, the judgment of the Superior Court is reversed, and the case is remanded to the Superior Court with directions to enter judgment in M.P. 13465 denying the school committee's motion to vacate the award and granting the counterclaim of the union to confirm said award.

MURRAY, J., did not participate.