# United States Court of Appeals
## For the First Circuit

No. 19-1245

JAY FURTADO,

Plaintiff, Appellant,

v.

AMY PAGE OBERG; DARROWEVERETT LLP,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Howard, Chief Judge,
Lynch and Kayatta, Circuit Judges.

Thomas R. Noel, with whom Lyndsey A. Fiore and Noel Law were
on brief, for appellant.
Jennifer L. Markowski, with whom Catherine M. Scott and
Freeman Mathis & Gary, LLP were on brief, for appellees.

February 5, 2020

**LYNCH**, **Circuit Judge**.  In August 2008, three would-be members of a not-yet-created limited liability company (LLC), including the plaintiff, Jay Furtado, met with Rhode Island attorney Amy Page Oberg of the firm DarrowEverett LLP, seeking her help to establish an LLC for a gym.  Out of that 2008 engagement, this July 2015 lawsuit against Oberg and her firm has emerged.

In March 2013, Oberg was rendered quadriplegic and unable to speak.  She is represented in this matter, and her husband has medical and legal power of attorney, but she has been unavailable to testify or otherwise participate meaningfully in discovery.

The district court entered summary judgment against Furtado.  We do not adopt its reasoning.  We are free to affirm on any grounds made manifest by the record, see Bower v. Egyptair Airlines Co., 731 F.3d 85, 92 (1st Cir. 2013), and we do so here.

I.

The participants in the 2008 meetings with Oberg were Furtado, Karin Dreier, and Oswaldo Powell, who together sought to start a gym called 360 Total Fitness.  Dreier was a longtime client and friend of Oberg's, and Dreier introduced Oberg to Furtado and Powell.  Oberg recommended to the three that they form an LLC.

The file contains no engagement letter from Oberg to Dreier or Furtado.  Nor is there evidence that Oberg communicated to Furtado that she was not representing him or obtained a waiver

from him. Oberg stored the documents related to the LLC matter as a new matter file within Dreier's existing client file in DarrowEverett's filing system. Dreier told Furtado that Oberg would represent the three potential members of the LLC in its formation.

Oberg prepared an initial Operating Agreement (OA) for the LLC, which the three members each signed on or about August 21, 2008. LLC Articles of Organization for "360° Total Fitness Training, LLC" were filed with the Rhode Island Secretary of State's Corporations Division on August 19, 2008. The Articles bore the name and address of Karen Dreier as the LLC's manager and the person authorized to file the Articles. The OA provided a deadline of August 26, 2008, by which the three members had to execute and deliver to Oberg an Amended Operating Agreement (AOA). The OA spelled out that a member's failure to execute and deliver the AOA meant he or she would cease to be a member. Oberg also discussed these consequences with Furtado, as he admits.

On August 23, 2008, Oberg sent Dreier a one-sentence email extending the August 26, 2008, deadline to September 3, 2008, with a subject line that instructed Dreier to sign the email and to have Furtado and Powell sign as acknowledgment. Dreier did so, and each of the three signed a printed copy of the email, each dating it August 23, 2008.

Despite being informed of the consequences of failing to execute the AOA, Furtado never signed an AOA at any point, much less by the extended deadline. Furtado did not ask Oberg or Dreier about an AOA at any point between August 24, 2008, and September 3, 2008. Dreier did sign the AOA, writing "as of August 26, 2008" below her signature.[1] The copy of the AOA in evidence as signed by Dreier lists only Dreier's name.

Later in September 2008, Furtado spoke with Oberg to seek legal advice about a separate matter involving his ownership of a truck. The complaint against Furtado in that matter was faxed to Oberg on September 16, 2008, and Oberg settled the matter on October 30, 2008. Furtado did not sign an engagement agreement related to the truck matter, did not receive a bill from Oberg, and did not pay Oberg, though he did give her a bottle of wine.

At some point in late 2011 or early 2012, wanting to assess the company's condition, Furtado asked Dreier if he could look at the LLC's financials. Dreier responded that she did not have to show him the financials because he was "not an owner." Furtado then tried to contact Oberg, but learned that she was no longer practicing at DarrowEverett.

Furtado obtained his own counsel and sued Dreier in state court in February 2013, asserting that he was an owner of the LLC.

---

[1] Furtado disputes that Dreier in fact signed on August 26, 2008, but that dispute is not material to the outcome.

He did not sue Oberg. In January 2014, some six years after its opening, the gym closed and the LLC stopped operations. Furtado's state court case against Dreier settled in early 2015, and Furtado estimates his net proceeds from that settlement as "under [$]30,000."

On July 27, 2015, apparently dissatisfied with that settlement, Furtado sued Oberg and the law firm. He brought three claims: legal malpractice, breach of fiduciary duty, and misrepresentation. After discovery, the district court entered summary judgment for defendants. Furtado appealed.

## II.

In moving for summary judgment at the conclusion of discovery, the defendants argued that Furtado did not have evidence of any loss proximately caused by any claimed breach of any alleged duty owed to him. Under Rhode Island law, the proximate cause of a loss is an element of each of Furtado's claims. Coccoli v. Town of Scituate Town Council, 184 A.3d 1113, 1120 (R.I. 2018) (fraudulent misrepresentation); Audette v. Poulin, 127 A.3d 908, 911 (R.I. 2015) (breach of fiduciary duty); Ahmed v. Panone, 779 A.2d 630, 632–33 (R.I. 2001) (legal malpractice). The district court did not consider this alternative ground, as it found no breach of any duty, in any event.

On appeal, the defendants prominently raised and fully developed this argument as an alternative ground for affirmance,

devoting a discrete section of their brief to it. Furtado's reply brief developed no opposition to the argument, not even mentioning it.

Our case law allows us to affirm on grounds not reached by the district court in appropriate circumstances. Bower, 731 F.3d at 92 (noting that "[w]e may affirm on any independently sufficient grounds made manifest by the record," and dismissing the plaintiff's claim as preempted, when the district court based its dismissal on other grounds); Rockwood v. SKF USA Inc., 687 F.3d 1, 9 (1st Cir. 2012) (same, in the summary judgment context). The argument was plainly and prominently made on appeal as it also was in the district court[2] and, on appeal, Furtado was called upon to marshal any evidence and argument in opposition. Allowing the defendants to press the damages issue on appeal presents no unfairness to Furtado.

Our caselaw also makes clear that we may treat a party's failure on appeal to respond to a properly raised argument for summary judgment as waiver. See Latin Am. Music Co. v. Am. Soc. of Composers Authors & Publishers, 593 F.3d 95, 101 (1st Cir. 2010); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990);

---

[2] In the district court, Furtado made only a brief response and cited no evidence, arguing that the LLC's lack of profits had not been established and that, as to damages, he gave his time and labor to a business he reasonably believed he owned. But it is undisputed that he received compensation for at least some of those efforts.

see, e.g., <u>Rando</u> v. <u>Leonard</u>, 826 F.3d 553, 557 (1st Cir. 2016) (holding that the plaintiff waived an argument in her appeal after a grant of summary judgment because the defendant clearly raised the issue and the plaintiff failed to adequately respond). Even if there were any doubt Furtado has waived on appeal any argument that a reasonable jury could find that any breach by the defendants proximately caused him harm, we would reach the same result.

Our own unassisted review of the record discloses no apparent flaw in the defendants' argument. Furtado offered no evidence that the gym ever turned a profit, so any argument that he would have benefitted from being a member of the LLC is unsupported. In discussing other issues, Furtado called into question reimbursement payments made to Dreier that he thinks may have been inappropriate. But Furtado, who bears the burden of proving proximate cause of loss and damages, has not mounted any argument -- much less evidence to show -- that any of those payments were improper. Nor has he offered any evidence as to the amounts involved, or whether those amounts were enough to make up for the documented losses. Additionally, the defendants point out that Furtado declined to itemize damages in written discovery. No reasonable jury could find on this record that the gym was or would have been profitable.

As for any contention that Furtado would have found different and more gainful employment had he known he was not a

member of the LLC, which the defendants address clearly in their response brief, Furtado has not set forward any evidence to back it up.  When we asked at oral argument, counsel claimed that such a contention was made in his statement of facts submitted to the district court.  But we cannot find any such argument or evidence in that document.  And even if Furtado had testified that he would have looked for another job, he has not offered evidence that other employment would have resulted in him making more than what he netted by training personal clients at the gym.  This simply is not enough to allow a jury to conclude that Furtado suffered any lost wages.

We affirm the entry of summary judgment and award costs to appellees.